UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:

DRY TECH 24/7, INC.,

    Plaintiffs,

v.

THE CLOROX COMPANY,
a foreign corporation,

    Defendant.

_____/

## COMPLAINT

Plaintiff, DRY TECH 24/7, Inc., (herein referred to as "Plaintiff"), by and through its undersigned counsel, hereby file this Complaint against Defendant, THE CLOROX COMPANY (hereinafter referred to as "Defendant"), a Foreign Profit Corporation, and says:

## JURISDICTION AND VENUE

1. This action is brought against the Defendant for breach of contract, tortious interference with business relations, promissory estoppel, detrimental reliance and breach of implied covenant of good faith and fair dealing under Florida common law.

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332 and §1367.

3. Jurisdiction is proper pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. Venue is proper in the Southern District of Florida because Plaintiff bought and resold Defendant's goods in this District; because Defendant, at all material times, conducted and continue to conduct business in the Southern District of Florida; because the acts that give rise to

Plaintiff's claims within the Southern District of Florida; pursuant to 28 U.S.C. §§ 1391(b) and (c); and because Defendant is subject to personal jurisdiction herein.

5. Plaintiff says that all conditions precedent to the maintenance of this action have heretofore been performed or have been waived.

## PARTIES

6. Plaintiff is a minority owned corporation organized and existing under and by virtue of the laws of Florida with its principal place of business in Fort Lauderdale, Broward County, Florida. During all times relevant to this Complaint, Plaintiff was a distributor for Defendant.

7. Defendant is a corporation organized and existing under and by virtue of the laws of Delaware with its principal place of business in Oakland, California. Defendant has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

## GENERAL ALLEGATIONS

8. Plaintiff and Defendant entered into a Clorox Total 360 System Distributor Access agreement ("Agreement") on or around November 2019.

9. Maxine Gomez, the principal of Dry Tech, is a state certified instructor for mold remediation licenses. On behalf of the National Organization of Remediators and Mold Inspectors (NORMI), Gomez trains individuals to obtain the mold remediation and mold assessor licenses.

10. Gomez knew a person named Rick O'Shea who held the patent to Byoplanet, an electrostatic machine, and learned that O'Shea had recently licensed the patent to Clorox.

11. Gomez was then invited to a meeting with O'Shea and John Barrett, the director of ISSA, the entity which governs janitorial certifications.

12. At that meeting, which took place in late 2017, those present discussed that the electrostatic machine now licensed to Clorox could have applications in the mold remediation business.

13. Soon after the meeting between Gomez, Barrett and O'Shea, Barrett introduced Gomez to Tom Fahlen, the head of research and development at Clorox.

14. Following discussions between Gomez and Fahlen, Clorox provided Gomez a Byoplanet electrostatic machine and chemicals to run in field trials which were comprised of mold remediations on building materials in residential and commercial properties. These trials took place between approximately February 2018 through October 2018. The trials were a success and demonstrated that the chemical application of the electrostatic machine was effective for mold remediation.

15. Plaintiff continued to use the Byoplanet electrostatic machine in the course of its business with Clorox's approval throughout 2019, during which time discussions were held between Gomez, on behalf of Dry Tech, and Clorox relative to Dry Tech becoming a Clorox distributor for the electrostatic machine specific to janitorial disinfecting services.

16. In November 2019, Dry Tech was approved to be a specialty distributor of the electrostatic machine and related chemicals for the Southeastern United States region comprised of Florida, Georgia, Alabama, and Tennessee.

17. The Byoplanet electrostatic machine became commercially known as the Clorox Total 360 machine.

18. The distributor Agreement allowed Plaintiff to purchase Clorox Total 360 devices and chemicals from their national distributor, Essendant, to resell to companies and municipalities.

19. Per the agreement, Plaintiff would buy the Clorox Total 360 devices for $4100 and would resell the machines for $4000. Upon sale of the devices Defendant was to rebate Plaintiff $1000 per machine within ten to fifteen days.

20. In furtherance of the distribution agreement, Plaintiff retained a sales staff and obtained orders for approximately 250 machines, between approximately February 2020 and August 2020.

21. In February 2020, the Covid-19 epidemic began in the United States, and it was quickly determined that the Clorox Total 360 machines have a valuable use in the disinfecting of surfaces in the war against Covid-19.

22. During the relevant time frame, Plaintiff built a vast portfolio of business including schools, municipalities, first responders, assisted living facilities and casinos, etc. Many of Plaintiff's customers were high priority essential workers.

23. Notwithstanding their distribution agreement with Plaintiff, Defendant unilaterally chose to supply the machines to Home Depot and other national retailers, and refused to fill the orders from Plaintiff, such that Plaintiff only received about 50 machines in total. Ultimately, while Plaintiff lacked the machines necessary to fill its orders, Home Depot and other retailers had a surplus of the machines and chemicals on their shelves.

24. As a result of Clorox's failure to timely deliver the machines to Plaintiff, Dry Tech was unable to fulfill its orders and lost the business relationship with its customer base.

25. In addition to the machines, Plaintiff's distributor agreement required Plaintiff to provide the Clorox 360 chemical, because otherwise the warranty on the machines would be void should another brand of chemicals be used in the machines.

26. A gallon of the Clorox chemicals was effective for about 6000 square feet of surface area and were sold in cases of four gallons each. In practice, a machine would likely use as much as a case of chemicals each day.

27. At the beginning of the distribution relationship, Plaintiff would place an order for solutions and would receive the order within a couple of days from Defendant.

28. However, in an allocation scheme similar to the distribution of the machines, Clorox refused to provide the chemicals necessary for Plaintiff to service its customer base relative to the machines that had actually been delivered.

29. Thus, Plaintiff's customer base moved over to Home Depot and similar retailers to obtain the chemical solutions necessary to operate the machines.

30. In approximately September/October 2020, Defendant completely stopped sending Plaintiff any chemical solution allocations, citing shortages.

31. Plaintiff routinely had to wait six to eight months for the rebates instead of being paid within the ten to fifteen days per agreement despite the multiple requests for payment.

32. Plaintiff escalated the supply issue to her regional sales manager at Defendant, Joe Solak, who informed her that she did not have priority to Defendant's products and she will receive inventory when the demands of other distributors, notably Home Depot, have been met.

33. The substantial value of the distribution agreement was in the supply of the chemicals where the per case profit to Plaintiff ranged from $14 to $34 per case.

34. Due to Defendant's refusal to supply Plaintiff with products per the Agreement, Plaintiff's business was devastated.

35. Plaintiff lost all of its customers and its salespeople left the company because no orders could be filled.

36. Plaintiff has suffered monetary and reputational harm due to Defendant's refusal to supply Plaintiff with products pursuant to the Agreement.

37. Plaintiff has retained the undersigned firm to prosecute this action on its behalf and has agreed to pay a reasonable fee for its services.

38. Plaintiff is entitled to its reasonable attorney's fees and costs if it is the prevailing party in this action.

## COUNT I: BREACH OF IMPLIED IN FACT CONTRACT

39. Plaintiff re-alleges and re-avers paragraphs 1–38, as fully set forth herein.

40. Plaintiff and Defendant entered into a written agreement wherein Defendant would provide Plaintiff with Distribution access to resell its Clorox Total 360 products.

41. From the inception of the agreement until approximately September/October 2020, Defendant would provide Plaintiff with a monthly allotment of Clorox Total 360 products.

42. Based on the Agreement, Plaintiff developed a book of business, sold at least fifty (50) Clorox Total 360 devices and received purchase orders for Clorox Total 360 solution to be used in the devices sold.

43. Upon receiving purchase orders from its customers, Plaintiff's customers would place a deposit for their orders and Plaintiff would pay its salespeople a commission based on the sales at the time the orders were placed.

44. In approximately September/October 2020, Defendant refused to supply Plaintiff its monthly allotment of Clorox Total 360 solution despite Plaintiff having purchase orders in hand for the solution.

45. Due to Defendant's failure to supply any product to Plaintiff in approximately September/October 2020, Plaintiff was unable to fill the purchase orders of its customers.

46. Since Plaintiff could not fill their customers' orders, Plaintiff had to return all the deposits obtained but was not able to recoup the commissions already paid to its salespeople.

47. The contractual terms in regard to how much product Defendant would supply Plaintiff on a monthly basis was inferred from the parties' conduct but not actually written in the Agreement.

48. Plaintiff relied on receiving at least its monthly allotment when it took purchase orders from its customers.

49. Plaintiff performed all of its obligations pursuant to the written agreement, but Defendant breached the agreement by refusing to supply Plaintiff with Clorox Total 360 products.

50. Plaintiff has been damaged by Defendant's breach of the agreement and are entitled to damages.

51. As a result of the breach, Plaintiff suffered financial and reputational losses.

**WHEREFORE**, Plaintiff request judgment against Defendant as follows:

   a) Compensatory damages according to proof at trial;

   b) Consequential damages;

   c) Plaintiff's costs of suit herein; and

   d) Such other relief as the Court deems just and proper.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

52. Plaintiff re-alleges and re-avers paragraphs 1–38 as fully set forth herein.

53. This is an action against Defendant for breach of the covenant of good faith and fair dealing.

54. Plaintiff and Defendant entered into a written agreement wherein Defendant would provide Plaintiff with Distribution access to resell its Clorox Total 360 products.

55. The contract is ambiguous as to what "access" means under the contract in that the contract does not include terms that specifically delineate the amount of Clorox Total 360 products that Defendant was required provide to Plaintiff.

56. The purpose of the Agreement was to grant Plaintiff the right to resell Defendant's products and Plaintiff expected to receive product to resell under the Agreement.

57. Without having access to Defendant's product, Plaintiff could not resell Defendant's products.

58. Defendant consciously and deliberately refused to provide Plaintiff with its Clorox Total 360 products in approximately September/October 2020.

59. Due to Defendant's conscious and deliberate refusal to provide Plaintiff with Clorox Total 360 products, Plaintiff was unable to fill the purchase orders it received for the products from its customers.

60. Plaintiff has suffered monetary and reputational damages due to Defendant's refusal to provide Plaintiff with Clorox Total 360 products.

**WHEREFORE**, Plaintiff demands judgment for:

    a) Compensatory damages according to proof at trial;

    b) Consequential damages;

    b) Plaintiff's costs of suit herein; and

    c) Such other relief as the Court deems just and proper.

## COUNT III – DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL

61. Plaintiffs re-allege and re-aver paragraphs 1–38, as fully set forth herein.

62. Defendant promised Plaintiff distribution rights to resell Defendant's Clorox Total 360 products.

63. Defendant should have reasonably expected that Plaintiff would generate business to resell its Clorox Total 360 products based on its promise that Plaintiff had distribution rights.

64. Based on the promise that Plaintiff had distribution rights, Plaintiff accepted purchase orders for Clorox Total 360 products, deposits for those orders and paid out commissions based on the orders.

65. When Defendant refused to honor Plaintiff's distribution rights by refusing to provide Clorox Total 360 products for Plaintiff to resell in approximately September/October 2020, Plaintiff suffered monetary and reputational harm.

66. Injustice can only be avoided by enforcing Defendant's promise.

**WHEREFORE**, Plaintiff demands judgment for:

a) Compensatory damages according to proof at trial;

b) Consequential damages;

b) Plaintiff's costs of suit herein; and

c) Such other relief as the Court deems just and proper.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

67. Plaintiffs re-allege and re-aver paragraphs 1–38, as fully set forth herein.

68. Plaintiff had a business relationship with its customers wherein Plaintiff agreed to sell Clorox Total 360 products to its customers.

69. Based on this business relationship future economic benefit to the Plaintiff was likely.

70. Defendant was aware that Plaintiff had a business relationship to sell Clorox Total 360 products to its clients as that was the purpose of the Agreement. Moreover, Plaintiff informed

Defendant on numerous occasions that it had purchase orders in hand for Clorox Total 360 products.

71. Defendant wrongfully and intentionally interfered with Plaintiff's business relationship with its customers by refusing to provide Plaintiff with access to Clorox Total 360 products to resell.

72. Defendant's refusal to provide Plaintiff with access to Clorox Total 360 products to resell caused Plaintiff to suffer monetary and reputational damages.

**WHEREFORE**, Plaintiff demands judgment for:

a) Compensatory damages according to proof at trial;

b) Consequential damages;

b) Plaintiff's costs of suit herein; and

c) Such other relief as the Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT

73. Plaintiffs re-allege and re-aver paragraphs 1–38, as fully set forth herein.

74. Defendant promised Plaintiff distribution rights to resell Defendant's Clorox Total 360 products.

75. Based on the promise that Plaintiff had distribution rights, Plaintiff developed a book of business, sold at least fifty (50) Clorox Total 360 devices and received purchase orders for Clorox Total 360 solution to be used in the devices sold.

76. When Plaintiff accepted purchase orders, customers put down deposits and Plaintiff paid commissions to its salespeople based on the orders.

77. Defendant failed to honor Plaintiff's distribution rights by refusing to provide Clorox Total 360 products for Plaintiff to resell in approximately September/October 2020.

78. Plaintiff could not fill the purchase orders for its customers which caused its customers to obtain the Clorox Total 360 products elsewhere.

79. Plaintiff's customers had to purchase Clorox Total 360 products due to the warranty on the machines that require only Clorox Total 360 products be used.

80. Therefore, Clorox benefited from the business Plaintiff generated when it sold Clorox Total 360 machines.

81. By not being able to fill the purchase orders, Plaintiff had to return the customers deposits and lost all potential future revenue.

82. Defendant was therefore unjustly enriched by receiving said economic benefits that Plaintiff lost.

**WHEREFORE**, Plaintiff demands judgment for:

a) Compensatory damages according to proof at trial;

b) Consequential damages;

c) Attorney's fees and costs associated with this action; and

d) Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues contained herein so triable as a matter of right.

Dated: July 11, 2022.

        **LAW OFFICES OF CHARLES EISS, P.L.**
        Attorneys for Plaintiff
        7951 SW 6th Street, Suite 112
        Plantation, Florida 33324
        (954) 914-7890 (Office)
        (855) 423-5298 (Facsimile)

By:   /s/ Charles Eiss
      CHARLES M. EISS, Esq. (FBN: 612073)
      chuck@icelawfirm.com
      SHANNA WALL, Esq. (FBN: 0051672)
      shanna@icelawfirm.com