## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-61291-CIV-SINGHAL/DAMIAN

**DRY TECH 24/7, INC.**,

     Plaintiff,

v.

**THE CLOROX COMPANY,** and
**ESSENDANT, CO.**,

     Defendants.

_____/

### REPORT AND RECOMMENDATION
### ON MOTIONS TO DISMISS [ECF NOS. 59 & 60]

THIS CAUSE is before the Court on Defendant The Clorox Company's ("Clorox")
Motion to Dismiss Second Amended Complaint with Prejudice [ECF No. 59] and
Defendant Essendant, Co.'s ("Essendant") Motion to Dismiss Count VI of Plaintiff's
Complaint [ECF No. 60], both filed May 12, 2023, (collectively, the "Motions").[1]

The undersigned has reviewed the Motions, the Responses and Replies thereto [ECF
Nos. 66, 69, and 70], the pertinent portions of the record, and all relevant authorities and is
otherwise fully advised in the premises. The undersigned also heard from the parties who
appeared, through counsel, for a hearing on the Motions on December 13, 2023. For the
reasons set forth below, the undersigned recommends that Clorox's Motion to Dismiss and
Essendant's Motion to Dismiss Count VI be granted.

---

[1] The Honorable Raag Singhal, United States District Judge, referred the Motions to the
undersigned for a Report and Recommendation on September 5, 2023. [ECF No. 73]. *See*
28 U.S.C. § 636(b)(1)(B).

I.   **BACKGROUND**

   A.  *Relevant Factual Allegations*

Dry Tech makes the following allegations in the Second Amended Complaint [ECF No. 52 ("SAC")], which the Court accepts as true for purposes of determining the Motions:

Dry Tech entered into a Clorox Total 360 Distributor Access Agreement (the "Agreement") with Clorox in November 2019.[2] (SAC at ¶ 16). Pursuant to the Agreement, Dry Tech became an authorized distributor of Clorox's electrostatic machines and chemicals, which are used for mold remediation. (*Id.* ¶¶ 12, 18). The Agreement provided that Dry Tech would purchase the machines and chemicals from Clorox's national distributor, Essendant, to resell to Dry Tech's customer base. (*Id.* ¶ 18). Essendant advised Dry Tech that Dry Tech was required to purchase a minimum of $1,200.00 per month of Clorox products from Essendant. (*Id.* ¶ 19). Once the COVID-19 epidemic began in February 2020, it was quickly determined that the Clorox machines could be used to disinfect surfaces, and thus Dry Tech had an increased demand for the products. (*Id.* ¶ 25). Dry Tech retained a sales staff and submitted orders for approximately 250 Clorox machines between February and August 2020. (*Id.* ¶ 24). During that time, Dry Tech built a vast portfolio of business, including schools, municipalities, first responders, assisted living facilities, and casinos. (*Id.* ¶ 26).

Dry Tech alleges that "Clorox unilaterally chose to allocate the machines to Home Depot and other national retailers and refused to permit Essendant to fill the orders from [Dry Tech], such that [Dry Tech] only received about 50 machines in total." (*Id.* ¶ 35). Dry Tech further alleges that "Clorox refused to allocate the chemicals necessary for [Dry Tech]

---

[2] As discussed below, Dry Tech did not attach a copy of the Agreement to the SAC, but Clorox attached a copy to its Motion.

to service its customer base relative to the machines that had actually been delivered." (*Id.* ¶¶ 30). According to Dry Tech, because it could not procure the machines and chemicals, it lost its customers and sales staff. (*Id.* ¶¶ 31, 39).

### B. *Procedural History*

On July 11, 2022, Dry Tech filed the original Complaint against Clorox asserting five claims: (1) breach of implied in fact contract; (2) breach of the covenant of good faith and fair dealing; (3) detrimental reliance/promissory estoppel; (4) tortious interference with business relations; and (5) unjust enrichment. [ECF No. 1]. On August 19, 2022, Clorox filed a motion to dismiss the original Complaint in its entirety for failure to state a claim. [ECF No. 15]. Clorox later filed a motion to stay discovery pending resolution of the motion to dismiss. [ECF No. 24]. On December 2, 2022, the Court granted the motion to stay, and discovery has been stayed in this case since that time. [ECF No. 30].

Thereafter, on December 5, 2022, the Court granted the motion to dismiss and dismissed the original Complaint without prejudice to Dry Tech filing an Amended Complaint. [ECF No. 31]. In doing so, the Court reasoned:

> The Complaint clearly contains contradictory allegations: it alleges that Dry Tech contracted the right to purchase products from Essendant and that Dry Tech purchased products directly from Clorox . . . . The problem is that Dry Tech's Complaint does not allege [a distributor agreement]. If Dry Tech wishes to pursue a remedy under the distributorship agreement, it must allege facts that would show a breach of the distributorship agreement or bad faith conduct in connection with that agreement. The Court agrees with Clorox that, as drafted, the Complaint does not allege any duty by Clorox to sell Clorox Total 360 products to Dry Tech. Whether the distributor agreement imposes such a duty remains to be seen. But Dry Tech should have the opportunity to amend its pleading.

*Id.* at 4.

On January 19, 2023, Dry Tech filed a First Amended Complaint against Clorox asserting the same five causes of action alleged in the original Complaint. [ECF No. 35]. On

3

February 1, 2023, Clorox filed a motion to dismiss the First Amended Complaint with prejudice for failure to state a claim on grounds Clorox had no duty to supply Dry Tech with a specific quantity of products. [ECF No. 36].

Dry Tech requested leave to amend its First Amended Complaint and to add Essendant as an additional party. [ECF No. 45]. On April 13, 2023, the Court granted leave to amend and denied as moot Clorox's second motion to dismiss, following which Dry Tech filed the Second Amended Complaint on April 18, 2023. [ECF No. 52]. In the April 13, 2023 Order, the Court admonished that "[n]o further amendments to the pleadings will be permitted." *See* [ECF No. 51].

In the Second Amended Complaint, which is the operative pleading, Dry Tech asserts five causes of action against Clorox: (1) breach of implied in fact contract; (2) breach of the covenant of good faith and fair dealing; (3) detrimental reliance/promissory estoppel; (4) tortious interference with business relations; and (5) unjust enrichment (*Id.* ¶¶ 43–87), and one cause of action, Count VI, against Essendant for breach of contract. (*Id.* ¶¶ 88–93). Notably, although Dry Tech references several exhibits in its Second Amended Complaint, no exhibits are attached (other than a summons, which Dry Tech subsequently struck (*see* ECF No. 53)). Giving Dry Tech the benefit of the doubt, the undersigned has considered the exhibits attached to the First Amended Complaint, which do appear to align with the referenced exhibits in the Second Amended Complaint. *See* [ECF Nos. 35-1; 35-2; 35-3].

Defendants filed the Motions to Dismiss now before the Court on May 12, 2023. [ECF Nos. 59 and 60]. The Motions are fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). This pleading requirement serves to "give the defendant fair notice of what a plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . [and] a formulaic recitation of the cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* A plaintiff makes a facially plausible claim when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."
*Iqbal*, 556 U.S. at 679. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it
is clear that no relief could be granted under any set of facts that could be proved consistent
with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon*, 467 U.S. at 73).

## III.   DISCUSSION

With the foregoing in mind, the undersigned first addresses the issues raised in
Essendant's Motion to Dismiss Count VI of the Second Amended Complaint and then turns
to Clorox's Motion to Dismiss.

### A.  *Essendant's Motion to Dismiss Count VI*

In its sole claim against Essendant, Dry Tech asserts a claim for breach of contract in
Count VI of the Second Amended Complaint. Essendant seeks dismissal of Count VI on
grounds Dry Tech fails to allege there is a valid contract between Essendant and Dry Tech.

In Count VI, Dry Tech alleges that Essendant breached the Agreement between Dry
Tech and Clorox by "failing to supply the product to fulfill the purchase orders placed" by
Dry Tech. (SAC ¶ 92). According to Dry Tech's allegations, Essendant "advised [Dry Tech]
on more than one occasion that [Dry Tech] was contractually obligated to purchase the
minimum threshold of Clorox products from Essendant." (*Id.* ¶ 90).

In the Motion to Dismiss, Essendant argues that Dry Tech's claim for breach of
contract fails because Dry Tech does not plead a contractual relationship with Essendant.
*See* Essendant's Mot. at 2. According to Essendant, there is nothing in the Second Amended
Complaint demonstrating that an actual contract exists between Essendant and Dry Tech
that would subject Essendant to a breach of contract claim. *Id.* Essendant asserts it only

served as a conduit through which Dry Tech could perform its obligations under Dry Tech's contract with Clorox. *Id.* at 6.

Under Florida law, to establish a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract between the parties; (2) a material breach; and (3) damages. *Oglesby v. Integon Nat'l Ins. Co.*, No. 20-cv-61347, 2020 WL 6379367, at \*2 (S.D. Fla. Aug. 25, 2020) (Singhal, J.) (citing *Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.*, 941 So. 2d 396, 398 (Fla. 4th DCA 2006)). To allege a contract, a party must allege "the facts from which the legal conclusion that a contract existed may be drawn," that is, an offer, acceptance of the offer, and consideration. *See C.I. Spataro Napoli, S.A. v. Fashion Concepts, Inc.*, No. 12-80885-CV, 2012 WL 12862817, at \*1 (S.D. Fla. Dec. 28, 2012) (Hurley, J.) (citing 17A Am. Jur. 2d Contracts § 19). It is axiomatic that "a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *Woodard-CM, LLC v. Sunlord Leisure Prods., Inc.*, No. 20-23104, 2022 WL 890065, at \*6 (S.D. Fla. Feb. 11, 2022) (Torres, J.), *report and recommendation adopted*, 2022 WL 888369 (S.D. Fla. Mar. 25, 2022) (Williams, J.); *see also Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms.").

Here, the only contract identified by Dry Tech in the Second Amended Complaint is the Distributorship Agreement between Dry Tech and Clorox. Dry Tech does not allege that Essendant is a party to that Agreement. None of the allegations in Count VI, nor those incorporated by reference, include factual allegations demonstrating the existence of a contract between Dry Tech and Essendant. To the contrary, in Count VI, Dry Tech alleges that it "entered into a distribution agreement *with Clorox*[.]" SAC ¶ 89 (emphasis added). In

its Response to Essendant's Motion to Dismiss, Dry Tech fails to refute, or even address, Essendant's argument that there is no contract between Dry Tech and Essendant. *See* Resp at 6. Nor is the undersigned persuaded by Dry Tech's attempt to bind Essendant to the Agreement with Clorox by alleging that Essendant advised Dry Tech regarding the minimum product purchase requirement, and Dry Tech offers no authority for doing so. *See* SAC ¶¶ 90–91. When pressed on this issue at the hearing, Dry Tech was unable to articulate any obligation on Essendant's part, even if they did have a contractual relationship, such that Dry Tech could allege an agreement that Essendant breached.

Accepting the factual allegations in Count VI as true, and viewing them in the light most favorable to Dry Tech, Dry Tech fails to allege the existence of a contract between Dry Tech and Essendant or that Essendant was a party to Dry Tech's Agreement with Clorox. Therefore, the Court has no basis to determine whether Essendant breached a contract. *See Fashion Concepts*, 2012 WL 12862817, at *1. Instead, the allegations in the Second Amended Complaint demonstrate, at best, that Dry Tech had an arrangement with Essendant pursuant to which Dry Tech understood it was obligated to purchase $1,200 per month in Clorox products from Essendant. There are, however, no facts alleged that demonstrate that Essendant had agreed or was obligated to supply such products in any quantity to Dry Tech.

Because Dry Tech has not alleged facts to support the existence of a contract with Essendant, Dry Tech fails to adequately plead a breach of contract claim against Essendant. Therefore, the undersigned recommends that Essendant's Motion to Dismiss Count VI of the Second Amended Complaint be granted.

Essendant requests that the dismissal be with prejudice because, in the absence of a contract, Dry Tech cannot allege a breach of contract claim. At the hearing, Dry Tech's counsel requested leave to amend on grounds this was the first time Dry Tech had asserted a

claim against Essendant and that counsel needed to confer with the client regarding whether there was any agreement made with Essendant. The undersigned recommends that Dry Tech be given an opportunity to determine whether there was an agreement between Dry Tech and Essendant and whether there is a valid basis for leave to amend its breach of contract claim against Essendant.[3]

Accordingly, the undersigned recommends that Essendant's Motion to Dismiss Count VI be granted and that Count VI be dismissed without prejudice.

### B. *Clorox's Motion to Dismiss*

As noted above, Dry Tech alleges five claims against Clorox: (1) breach of implied in fact contract; (2) breach of the covenant of good faith and fair dealing; (3) detrimental reliance/promissory estoppel; (4) tortious interference with business relations; and (5) unjust enrichment. Clorox seeks dismissal of the claims against it in the Second Amended Complaint on grounds the Agreement between Dry Tech and Clorox does not require Clorox to allocate a specific quantity of products to Dry Tech. *See* Clorox's Mot. at 1–2. Clorox argues that Dry Tech's claims are all based on Clorox's alleged failure to allocate a sufficient quantity of products to Dry Tech but that Dry Tech fails to identify any agreement, express or implied, pursuant to which Clorox had a duty to allocate a specific quantity of products. *Id.* at 5. Thus, Clorox claims that in the absence of such a duty, all of Dry Tech's claims must fail. *Id.* The parties' arguments regarding each count are addressed below.

---

[3] The undersigned does not intend to suggest that this should open discovery. Based on the discussion at the hearing, Dry Tech's counsel sought to inquire of his client regarding communications with Essendant.

### 1.   Count I: Breach of Implied-In-Fact Contract

In Count I of the Second Amended Complaint, Dry Tech alleges Clorox breached an implied-in-fact contract when it failed to supply Dry Tech with sufficient products to meet its $1,200 per month minimum purchase requirement. SAC at 7–8. Clorox argues this claim fails because Dry Tech has not identified an agreement or promise, express or implied, pursuant to which Clorox agreed to supply any quantity of products to Dry Tech. Mot. at 7.

"A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Vanguard Plastic Surgery, PLLC v. Aetna Life Ins. Co.*, No. 22-cv-61853, 2023 WL 3171963, at *6 (S.D. Fla. Mar. 27, 2023) (Dimitrouleas, J.) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997), *as modified on clarification* (June 4, 1997)). In evaluating a claim based on an implied-in-fact contract "a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.* The standard for pleading and proving an implied-in-fact contract is higher than that for proving an express contract because "[a] *greater* burden should be placed upon a plaintiff who relies upon an implied contract than one who uses reasonable care and foresight in protecting himself by means of an express contract." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1304 (S.D. Fla. 2012) (Huck, J.) (citing *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949) (emphasis added)), *aff'd,* 714 F.3d 1234 (11th Cir. 2013).

Like an express contract, to show a breach of an implied-in-fact contract under Florida law, a plaintiff must establish a valid contract, material breach, and damages. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) ("Florida courts use breach of

contract analysis to evaluate claims of breach of contract implied in fact."); *Beck v. Lazard Feres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (providing the elements of breach of contract). Therefore, a plaintiff must show the existence of a valid contract by alleging: (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms. *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (Dimitrouleas, J.).

Initially, there is no dispute that Dry Tech and Clorox entered into a written Agreement. Although Dry Tech did not attach a copy of the written Agreement to the Second Amended Complaint, Clorox attached a copy of the Agreement that allegedly governed Dry Tech's relationship with Clorox to its Motion to Dismiss. [ECF No. 59-1].[4] Pursuant to that written Agreement, Clorox approved Dry Tech as a distributor of Clorox products. *See* Clorox's Mot. at 7; ECF No. [59-1]. However, as Clorox points out, the written Agreement does not obligate Clorox to allocate products, much less a specific quantity of products, to Dry Tech. *Id.*

Insofar as Dry Tech's claim that the parties had an implied-in-fact contract, Dry Tech fails to allege when or how an implied agreement was offered or accepted or, more importantly, what the essential terms of that agreement were with any level of specificity. *See Ruff v. Allianz Life Ins. Co. of N. America*, No. 19-cv-1709, 2021 WL 1053166, at *3 (M.D.

---

[4] This Court "may consider documents attached to a motion to dismiss where the document is central to the plaintiff's claim, and its authenticity is undisputed." *Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1217 (S.D. Fla. 2021) (Cooke, J.) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Dry Tech does not dispute the authenticity of the Agreement attached to Clorox's Motion, and the undersigned finds the Agreement is central to Dry Tech's claim (and Dry Tech does not dispute this). At the hearing, Dry Tech's counsel made some comments suggesting the attached agreement may not be the actual or only agreement between Dry Tech and Clorox, but, when pressed, Dry Tech's counsel did not claim any basis to assert such a claim.

Fla. Mar. 8, 2021) (dismissing claim for breach of implied-in-fact contract for failure to allege existence of such contract). Instead, Dry Tech offers broad, conclusory statements alleging that Clorox knew that Dry Tech was obligated to purchase a monthly minimum of $1,200.00 worth of Clorox products from Essendant under the Agreement. *See* SAC ¶ 49. And Dry Tech further alleges the contractual terms regarding the specific quantity of products was inferred from the parties' conduct. *Id.* ¶ 52. Dry Tech does not, however, specify what those inferred terms were. At the hearing, Dry Tech could not point to any communication, written or oral, in which Clorox agreed to any terms with Dry Tech outside of the written terms of the Distributorship Agreement.

A contract implied in fact does not turn on a benefit conferred on one party, but, instead, on a tacit promise made by a party. *See Valle v. AA & K Restoration Grp. LLC*, No. 1:19-CV-20873, 2020 WL 10055325, at *16 (S.D. Fla. Sept. 29, 2020) (Moore, J.), *aff'd sub nom. Valle v. Ceres Env't Servs., Inc.*, No. 21-12020, 2022 WL 1667015 (11th Cir. May 25, 2022). Here, Dry Tech does not point to any alleged conduct by Clorox to demonstrate an implied promise that Clorox undertook to allocate a sufficient quantity of products to fulfill all (or *any*) of Dry Tech's purchase orders with Essendant. Without such conduct by Clorox, or any other indication that Clorox intended to make such a promise, there can be no implied-in-fact contract. *See Chiron Recovery Ctr., LLC v. United Healthcare Srvs., Inc.*, No. 9:18-CV-81761, 2020 WL 3547047, at *7 (S.D. Fla. June 30, 2020) (Rosenberg, J.) (dismissing claim where the plaintiff failed to allege what actions the defendant allegedly took which might support a contract claim because "[w]ithout any alleged conduct, there can be no implied-in-fact contract").

Viewing the facts in the light most favorable to Dry Tech, Dry Tech fails to allege the existence of an implied-in-fact contract, and, therefore Count I should be dismissed with prejudice.[5]

### 2.  Count II: Implied Covenant of Good Faith and Fair Dealing

In Count II, Dry Tech alleges breach of the covenant of good faith and fair dealing. (SAC at 9–10). As with Count I, Clorox avers that this claim must also fail because Dry Tech has not alleged that Clorox breached any contractual obligation. Mot. at 4–6.

Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541, 548 (Fla. 2012). The implied covenant is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." *Chalfonte*, 94 So. 3d at 548 (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)). However, breach of the implied covenant of good faith and fair dealing does not provide an independent cause of action in the absence of a breach of contract. *Weaver*, 169 F.3d at 1317. "[A] cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Id.* at 1317–1318. Thus, "if a party cannot prove a breach of contract, its claims for breach of the

---

[5] With regard to dismissal *with prejudice*, as noted above, on April 13, 2023, the Court granted Plaintiff's Motion to file a Second Amended Complaint and admonished that "[n]o further amendments to the pleadings will be permitted." [ECF No. 51]. *See also Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1242 (S.D. Fla. 2011), *aff'd*, 470 F. App'x 726 (11th Cir. 2012) (denying leave to amend where "[p]laintiffs were unable to allege an adequate claim [ ] their second time around, and the [c]ourt has no reason to believe the third time will be a charm"). Moreover, Dry Tech has had two opportunities to identify a basis for an implied-in-fact contract with Clorox, in addition to the chance to articulate as much at oral argument, and it has been unable to do so.

implied covenant of fair dealing" must fail. *Validsa, Inc. v. PDVSA Servs., Inc.*, 424 F. App'x 862, 870 (11th Cir. 2011).

Here, as Clorox points out, Dry Tech has not alleged a breach of an express contract by Clorox, and, as discussed above, Dry Tech fails to allege a claim for breach of implied-in-fact contract in the Second Amended Complaint.

In its response to the Motion to Dismiss, Dry Tech cites general law on the implied covenant of good faith and fair dealing but fails to address Clorox's argument that such claim cannot survive because the parties' Agreement does not impose a duty on Clorox to allocate a specific quantity of products to Dry Tech versus other distributors, such that Clorox could have breached an express term of the contract by failing to supply a given quantity. In neither its Second Amended Complaint nor in its Response to Clorox's Motion, does Dry Tech identify an express term of its Agreement with Clorox pursuant to which Clorox was obligated to supply products to Dry Tech. Therefore, as discussed above, Dry Tech cannot prove a breach of contract by Clorox.

Thus, Dry Tech's claim for breach of the covenant of good faith and fair dealing must fail. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("This court has held that a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract.").

Accordingly, Clorox's Motion to Dismiss Count II should be granted, and Count II of the Second Amended Complaint should be dismissed with prejudice.

### 3.   Count III: Detrimental Reliance/Promissory Estoppel

In Count III of the Second Amended Complaint, Dry Tech alleges Clorox is liable to it based on a theory of detrimental reliance or promissory estoppel. (SAC at 10–11). Clorox cites the absence of a promise by Clorox as fatal to this claim, as well. Mot. at 8.

To state a claim for promissory estoppel under Florida law, a plaintiff must allege: (1) it detrimentally relied on a promise made the defendant; (2) the defendant should have reasonably expected the promise to induce action or forbearance on the part of the plaintiff; and (3) that injustice can only be avoided by enforcing the promise. *JustTech, LLC v. Kaseya USA LLC*, No. 22-22454, 2023 WL 5529845, at *8 (S.D. Fla. Aug. 28, 2023) (Martinez, J.) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)). Therefore, a promissory estoppel claim must plausibly allege, among other things, "a promise made by the promisor." *Adria MM Prods., Ltd. v. Worldwide Ent. Grp., Inc.*, No. 17-21603, 2018 WL 4268886, at *8 (S.D. Fla. Sept. 6, 2018) (Moreno, J.). Moreover, detrimental reliance on a promise must be demonstrated by the plaintiff taking some action as a result of the defendant's promise that is ultimately detrimental to the plaintiff. *JustTech*, 2023 WL 5529845, at *8.

In Count III, Dry Tech alleges that (1) Clorox promised Dry Tech distribution rights to resell Clorox Total 360 products through Essendant; (2) Clorox should have reasonably expected that Dry Tech would generate business to resell the Clorox products based on such promise; (3) Dry Tech accepted purchase orders and deposits for Clorox products and paid out commissions based on the orders; (4) Clorox refused to honor Dry Tech's distribution rights by refusing to allocate Clorox Total 360 products for Dry Tech to resell; and (5) Dry

Tech suffered monetary and reputational harm, which can only be avoided by enforcing Clorox's promise. (SAC at ¶¶ 67–71).

A review of the Second Amended Complaint reflects that Dry Tech has alleged that Clorox made a promise to it, that is, the promise that Dry Tech would have distribution rights to resell Clorox's products. The problem is that Dry Tech has not alleged that Clorox broke that promise. To the contrary, Dry Tech alleges it did receive and resell Clorox products through as late as August 2020. (*See* SAC at ¶¶ 24, 70). Dry Tech's promissory estoppel claim is based, instead, on Clorox's failure to supply a sufficient quantity of its products. Even accepting Dry Tech's allegations as true, that, as discussed above, is not a promise Clorox made. *See* Clorox's Mot. at 8. The undersigned agrees that Dry Tech's promissory estoppel claim must fail for this reason because the harm allegedly suffered by Dry Tech was not the result of a failure to honor the promise made. "The terms of a promise must be definite in relation to the remedy sought to demonstrate reasonableness under a promissory estoppel claim." *JustTech*, 2023 WL 5529845, at *8. Although Dry Tech alleges that it detrimentally relied on a belief that products would be made available to it, Dry Tech has not demonstrated that Clorox made any definite promises regarding the quantity of products that Clorox would allocate to Dry Tech under the Agreement.

In the absence of a specific promise to supply a specific quantity of products, Dry Tech's claim for promissory estoppel also fails, and Count III should be dismissed with prejudice.

### 4. Count IV: Tortious Interference with Business Relations

In Count IV of the Second Amended Complaint, Dry Tech alleges Clorox tortiously interfered with its business relationships. (SAC at 11). Specifically, Dry Tech alleges that (1) it had a business relationship with its customers wherein it agreed to resell Clorox products

16

to its customers; (2) Clorox was aware that Dry Tech had a business relationship to resell Clorox products to its clients pursuant to the Agreement; (3) Clorox wrongfully and intentionally interfered with Dry Tech's business relationships with its customers by refusing access to Clorox products to resell; and (4) Dry Tech suffered monetary and reputational damages. SAC at ¶¶ 73–77.

In the Motion, Clorox argues that the claim for tortious interference arises out of the Agreement and, therefore, is barred by Florida's independent tort doctrine. Florida's "independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Stepakoff v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1315–1316 (S.D. Fla. Oct. 31, 2022) (Bloom, J.) (quoting *Perez v. Scottsdale Ins. Co.*, 19-cv-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.)). In other words, the doctrine prohibits a claimant from "repackag[ing] [ ] breach of contract claims as independent actions in tort." *Id.* (quoting *Dorvil v. Nationstar Mortg. LLC*, 17-cv-23193, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019) (Martinez, J.)); *see also Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) ("District courts in Florida have thus held that it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." (cleaned up)). "The doctrine's impetus stems from [f]undamental contractual principles . . . [that] bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Yuken Corp. v. Gedcore, LLC*, No. 22-20661-CIV, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) (Altonaga, C.J.) (internal quotation marks and citations omitted). "Therefore, to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Kaye v. Ingenio,*

*Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J.) (dismissing plaintiff's fraudulent inducement claim because it was "precisely the same as a potential breach-of-contract claim"). "[T]he tort is independent if the plaintiff must prove facts 'separate and distinct from the breach of contract.'" *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1264 (M.D. Fla. 2010) (citation omitted).

According to Clorox, Dry Tech's tortious interference claim is based on the same factual allegations—that Clorox failed to honor its implied contractual obligations—as Dry Tech's breach-of-implied-contract claim in Count I. *See* Clorox's Mot. at 8–9. Clorox further argues Dry Tech seeks the same damages in both claims: the losses resulting from Clorox's alleged refusal to fulfill Dry Tech's purchase orders for Clorox products under the Agreement. *Id.* Dry Tech responds that it properly alleged each element for a tortious interference claim as required under Florida law.[6] Notably, Dry Tech does not appear to dispute that its tortious interference claim is barred under the independent tort doctrine. Instead, Dry Tech asserts that Rule 8(d)(2) of the Federal Rules of Civil Procedure permits a plaintiff to plead alternative theories of relief. Resp. at 5–6.

A review of the Second Amended Complaint reflects that Dry Tech has failed to allege facts in support of its tortious interference with business relations claim that are separate and distinct from the allegations in support of its breach of implied-in-fact contract claim. In Count IV, Dry Tech alleges that Clorox was aware that Dry Tech had a business relationship with its customers pursuant to which it had agreed to resell Clorox products and that Clorox was informed, directly and indirectly, through Essendant, that Dry Tech

---

[6] To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: "(1) the existence a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999).

had "purchase orders on hand" from its customers for Clorox products. (SAC at ¶ 75). Dry Tech further alleges that Clorox wrongfully and intentionally interfered with Dry Tech's business relations by "refusing . . . access to Clorox Total 360 products to resell." (*Id.* ¶ 76). There is no distinction between this allegedly tortious conduct and the conduct alleged in support of Dry Tech's breach of implied-in-fact contract claim. In Count I, Dry Tech similarly alleges that Clorox breached the Distribution Agreement "by refusing . . . access to the Clorox Total 360 products through its distributor, Essendant." (*Id.* ¶ 54). Moreover, Clorox's obligation to provide Dry Tech with distribution access to Clorox's products stems from the Agreement. *See Global Freight Warehouse, Inc. v. Ace Hardware Corp.*, No. 97-269-Civ, 1997 WL 580541, at *4 (S.D. Fla. Apr. 18, 1997) (Ungaro, J.) (dismissing claim for tortious interference based on the independent tort doctrine where plaintiff failed to allege facts in support of the tortious interference with business relationships that are separate and distinct from allegations in support of the breach of contract claim); *First Fin. Educ. Centers LLC v. Ziegler Grp., LLC*, No. 3:21-CV-157, 2021 WL 7450436, at *11 (M.D. Fla. Nov. 19, 2021), *report and recommendation adopted in part, rejected in part*, 2022 WL 1224019 (M.D. Fla. Mar. 1, 2022) (dismissing claim for tortious interference as barred by the independent tort doctrine because it is grounded on the alleged interference with plaintiff's business relationships with its clients in violation of the provisions of the parties' agreements).

The undersigned notes that Dry Tech has not alleged that Clorox interfered with Dry Tech's business relationships by repudiating the Agreement altogether and refusing to allocate *any* Clorox products to Dry Tech. In fact, an email chain attached as an exhibit to the First Amended Complaint indicates that Essendant had shipped out the remaining allocation for September 2020 and informed Dry Tech that it would receive "another 75

cases on next allocation" in October 2020. [ECF No. 35-3]. Rather, Dry Tech's tortious interference claim stems from Clorox's failure to allot a sufficient quantity of its products. As discussed above, Dry Tech fails identify how or where Clorox agreed to allocate a specific quantity of products to Dry Tech. As Clorox pointed out at the hearing, in the absence of such an agreement, Clorox had no duty to Dry Tech and, as such, Dry Tech cannot allege any tortious act done to interfere with its business relationships, a necessary element of its tortious interference claim.

The fact that the Dry Tech's breach of implied-in-fact contract fails, as discussed above, is of no consequence. The tortious interference claim is still barred under Florida's independent tort doctrine. *See Global Freight*, 1997 WL 580541, at *4 (dismissing both breach of contract and tortious interference claims where plaintiff failed to allege facts in support of the tortious interference with business relationships that are separate and distinct from allegations in support of the breach of contract claim); *Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP*, No. 19-14050-CIV, 2019 WL 3428552, at *3 (S.D. Fla. Apr. 18, 2019) (Maynard, J.), *report and recommendation adopted*, 2019 WL 11556746 (S.D. Fla. June 14, 2019) (Rosenberg, J.) (dismissing tort claim under independent tort doctrine where no contract claim was asserted).[7]

Viewing the allegations in the Second Amended Complaint as true, Dry Tech's claim for tortious interference with business relations does not require proof of facts that are

---

[7] Further, the undersigned is not persuaded by Dry Tech's argument that it pleaded its tortious interference claim in the alternative to its breach of implied-in-fact contract claim because "[i]t would be contrary to the basic premise of the independent tort doctrine to allow such pleadings in the alternative." *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-CV-604, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020) (cleaned up); *see also Perez*, 2020 WL 607145, at *2 (finding that, under Florida law, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract") (cleaned up).

separate and distinct from the facts that are the basis for its breach of implied-in-fact contract claim. Therefore, the tortious interference claim is barred by the independent tort doctrine, and Count IV is subject to dismissal with prejudice.

### 5. Count V: Unjust Enrichment

Lastly, Dry Tech asserts an equitable claim for unjust enrichment against Clorox alleging Clorox benefitted from the business Dry Tech generated for it when Dry Tech's customers purchased Clorox's products and that Clorox was unjustly enriched by keeping those economic benefits, the profits from sales of Clorox's machines, that Dry Tech lost. (SAC at 12).

The elements of a claim for unjust enrichment are: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Hercules, Inc. v. Pages*, 814 F. Supp. 79, 80 (M.D. Fla. 1993) (citing *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 712 (Fla. 2d DCA 1988)). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Gary v. D. Agustini & Asociados, S.A.*, 865 F. Supp. 818, 827 (S.D. Fla. 1994); *see also Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (granting a motion to dismiss an unjust enrichment claim where the existence of a contract was undisputed, and the plaintiff did not allege an adequate remedy at law did not exist).

Clorox argues that Dry Tech's claim for unjust enrichment should be dismissed because the parties' relationship is governed by an express contract. Conversely, if there is no valid contract, Clorox asserts the unjust enrichment claim is viable only if Dry Tech

conferred a *direct* benefit on Clorox which Dry Tech has failed to adequately allege. *See* Clorox's Mot. at 10. In its response to Clorox's Motion, Dry Tech does not address Clorox's arguments and merely contends an unjust enrichment claim may be pled in the alternative to a breach of contract claim. Resp. at 3–4.

There is no dispute that Dry Tech and Clorox entered into the Distributorship Agreement. Therefore, Dry Tech has an adequate legal remedy because it can seek relief pursuant to that Agreement. It is true that in some circumstances a party may plead an unjust enrichment claim in the alternative when a valid contract exists but, to do so, the claimant must allege that the claim is pled in the alternative and that no adequate legal remedy exists. *See Am. Marine Tech*, *Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082–83 (S.D. Fla. Oct. 11, 2019) (Bloom, J.) (granting motion to dismiss unjust enrichment claim for failing to acknowledge the existence of contractual remedies and failing to allege that such remedies are inadequate); *see also In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) ("An unjust enrichment claim can exist only if the subject matter of that claim is not covered by a valid and enforceable contract.").

Here, Dry Tech's unjust enrichment claim is not pled in the alternative, and Dry Tech has not alleged a lack of an adequate legal remedy.[8] Instead, Dry Tech's claim for unjust enrichment directly incorporates its factual allegations regarding the fact that there is an express agreement between Dry Tech and Clorox. *See* SAC at ¶ 78 (incorporating allegations in paragraph 18 regarding the distributorship agreement). *JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) (Marra, J.) ("There can be no unjust enrichment or promissory estoppel claim when there is

---

[8] At the hearing, the parties acknowledged that the relief available to Dry Tech pursuant to the Distributorship Agreement is limited, but Dry Tech has not alleged that there is a lack of an adequate legal remedy, as it must.

an express contract between the parties."). Yet, Dry Tech does not indicate that the remedies available pursuant to that Agreement are inadequate. Thus, contrary to its assertions, Dry Tech's claim for unjust enrichment has not been pled in the alternative.

Moreover, even if Dry Tech had pled the unjust enrichment claim in the alternative, as Clorox points out, Dry Tech has not alleged a direct benefit conferred on Clorox by Dry Tech. Conferring a benefit is a required element of an unjust enrichment claim under Florida law. *See, e.g.*, *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). That is, a plaintiff must *directly* confer a benefit on the defendant to prevail on an unjust enrichment claim. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (citations omitted); *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). Accordingly, where a plaintiff fails to allege that it directly conferred a benefit upon the defendant, dismissal is warranted. *See Marrache*, 17 F.4th at 1102 (affirming district court's dismissal of unjust enrichment claim where the allegations indicated that the plaintiff and other class members purchased bottles of Bombay from Winn-Dixie, not Bacardi, and therefore that the plaintiff only alleged an indirect benefit to Bacardi, which could not satisfy the first element of an unjust enrichment claim against Bacardi).

Dry Tech argues that it conferred a benefit upon Clorox through "the business [Dry Tech] generated when it sold Clorox Total 360 machines." (SAC ¶ 85). The Second Amended Complaint contains no allegation of a benefit conferred from Dry Tech to Clorox but, instead, alleges Clorox obtained "economic benefits" from Dry Tech's customers, who purchased Clorox's products through other distributors and retailers. (SAC ¶¶ 32, 87). As Dry Tech articulated at the hearing, the theory is that Clorox benefitted by keeping profits it received from Dry Tech's customers. Accepting these allegations as true, Dry Tech's unjust

enrichment claim is premised on an *indirect* benefit conferred upon Clorox. Such an indirect benefit is insufficient to establish a claim for unjust enrichment, and, therefore, Dry Tech's unjust enrichment claim must fail. *See Thurn v. Kimberly-Clark Corp.*, No. 22-cv-2526, 2023 WL 4455630, at *6 (M.D. Fla. July 11, 2023) (dismissing unjust enrichment claim where plaintiff conferred only an indirect benefit upon defendant); *see also AstroTel, Inc. v. Verizon Fla., LLC*, No. 8:11-cv-2224, 2012 WL 1581596, at *10 (M.D. Fla. May 4, 2012) (dismissing unjust enrichment claim where plaintiff alleged defendant received "business profits obtained from customers 'unjustly appropriated'" from plaintiff). Notably, when pressed at the hearing, Dry Tech was unable to identify any benefit directly conferred by it on Clorox that could serve as a basis for an unjust enrichment claim.

Accordingly, Dry Tech fails to state a claim for unjust enrichment. Clorox's Motion to Dismiss should be granted, and Count V of the Second Amended Complaint should be dismissed with prejudice.

## IV.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Clorox's Motion to Dismiss [ECF No. 59] and Essendant's Motion to Dismiss Count VI [ECF No. 60] be **GRANTED**. The undersigned further recommends that Counts I through V of the Second Amended Complaint be **DISMISSED** *with prejudice* and that Count VI of the Second Amended Complaint be **DISMISSED** *without prejudice* and that Dry Tech be given a limited opportunity to identify a basis, if any, for a breach of contract against Essendant.

The parties will have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the

Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 18<u>th</u> day of December, 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Raag Singhal, *U.S. District Judge*
Counsel of Record